[No. 39393.    Department One.    July 18, 1968.]

GLORIA GORVIN, *Appellant*, v. DONALD F. STEGMANN,
*Respondent and Cross-appellant.**

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for appellant.

*Gordon, Honeywell, Malanca, Peterson & Johnson,* by *William Goodwin, Jr.,* for respondent.

HALE, J.—Gloria Gorvin, the plaintiff, and Donald F. Stegmann, the defendant, were married in New York in 1947 and divorced in Georgia in 1953. The Georgia divorce decree called for support or alimony payments of $200 per month which the plaintiff now seeks to enforce under the Uniform Enforcement of Foreign Judgments Act, RCW 6.36. Urging a modification of the Georgia decree and at the same time denying that it ordered what was known in

*Reported in 443 P.2d 821.

Georgia as permanent alimony, the defendant asks that he be relieved of all further liability for alimony or support of his former wife.

Gloria Gorvin was a professional actress in Berlin, Germany, during the war years of 1942 and 1943, and in Frankfurt after the war in 1946 and 1947. In 1947, she married Donald F. Stegmann, an officer of the United States Army and they established their home in Columbus, Georgia, in July of that year. They had no children. In 1953, while Stegmann was stationed in Japan, she started a divorce action against him. The Superior Court for Muscogee County, Georgia, entered a final judgment and decree of divorce April 9, 1953, fixing

> alimony and support for the wife as follows: The agreement hereto attached and made a part hereof is hereby made a part of this decree, and the defendant, Donald F. Stegmann, is hereby ordered to pay to the Plaintiff, as provided by said agreement, the sum of Two Hundred Dollars ($200.00) per month, . . . and continuing until the death or remarriage of plaintiff.

Both parties were represented by counsel throughout the divorce proceedings. The divorce agreement, incorporated into the decree, acknowledged that the wife—then 29 years of age—was receiving the sum of $200 per month, $143.14 of which came from her husband's army allotment for quarters and subsistence as a Major, and a $56.86 monthly mortgage allotment on the house then occupied by the wife. The agreement then went on to state:

> The said Husband agrees to pay said Wife for her support and maintenance the sum of $200.00 per month in cash until the remarriage or death of the Wife, whichever occurs first, and said sum shall be paid by the Husband on the 10th day of each month to the Probation Officer of Muscogee County, Georgia, first payment being due and payable on the 10th day of April, 1953. The said Wife covenants that in the event of remarriage she will immediately notify the Probation Officer of Muscogee County, Georgia, by registered mail, of such remarriage.
>
> 3. The Wife accepts the provisions herein made for her in lieu of and in full settlement and satisfaction of

any and all claims and rights against the Husband, or against his estate, his heirs, executors, administrators and personal representatives, for her support and maintenance, or for alimony, temporary or permanent; and in full settlement and satisfaction of any and all other claims and rights whatsoever . . . which she, the wife, ever had, now has, or might hereafter have against the Husband . . . .

The agreement divided the property of the parties, item by item, and declared that there should be no modification or waiver of any of its terms unless agreed upon in writing by the parties.

Apparently the defendant paid $200 per month regularly until 1962. During a time when the plaintiff was temporarily living in Germany, the defendant, while residing in Pierce County, Washington, brought a petition in the superior court and obtained a default decree of modification relieving him completely of the duty to pay the $200 per month. This decree of modification, entered September 13, 1962, proved to be a nullity and was vacated in the present action for want of valid service.

Mrs. Gloria Gorvin, having for good cause changed her name from Stegmann, filed the instant petition in March, 1965, under RCW 6.36, the Uniform Enforcement of Foreign Judgments Act, Laws of 1953, ch. 191, p. 409, asking registration and enforcement of the April 9, 1953, divorce decree of the Superior Court for Muscogee County, Georgia. She alleged that the defendant, Donald F. Stegmann, had paid no support or alimony after August, 1962. Defendant answered that he is a resident of Washington and asked that the Georgia decree be deemed modified as of September 13, 1962, the date of the void decree of modification, and that, in the alternative, on the basis of changed conditions, the 1953 Georgia decree be so modified as to relieve him of all future liability to the plaintiff for support and alimony.

As earlier noted, the trial court for want of valid service vacated the September 13, 1962 decree of modification, but found that the defendant had faithfully maintained his $200 per month payments to the plaintiff through August,

1962. On the premise that a substantial change in condition of the parties had taken place since its entry in 1953, the trial court modified the Georgia decree.

According to the court's finding, the defendant's combined income from teaching school and Army retirement came to about $10,000 per year; his present wife earned about $5,600 as a school teacher, and thus his income had not diminished since entry of the Georgia decree. The court found, however, that plaintiff "is now in good health and is capable of and able to secure employment and of earning substantial income." The learned trial court thereupon in the instant cause entered a decree holding the defendant Stegmann in default of the Georgia decree at the rate of $200 per month for 44 months—from September, 1962, through April, 1966, and awarding plaintiff judgment for $8,800 with accrued interest at 6 per cent annually. The court then modified the Georgia decree, ordering defendant to pay $100 per month for 1 year, ending with the month of April, 1967, and decreed that thereafter the alimony or support payments should terminate and the defendant's financial responsibility toward plaintiff be at an end.

In reaching a decision to modify the Georgia decree, the trial court concluded that the decree did not provide what is known in Georgia law as permanent alimony, and, therefore, that the decree, when established as a foreign judgment under the laws of Washington, was subject to modification in this state.

Under the statutes and decisions of the Supreme Court of Georgia in effect prior to 1955, if a judgment for permanent alimony, based upon the agreement of the parties, contained no reservation of jurisdiction for the purposes of later modification, the trial courts of Georgia had no jurisdiction or authority to thereafter modify it. *Chandler v. Chandler*, 204 Ga. 40, 48 S.E.2d 841 (1948); *Estes v. Estes*, 192 Ga. 100, 14 S.E.2d 680 (1941), *see also Estes v. Estes*, 192 Ga. 94, 14 S.E.2d 681; and *Nipper v. Nipper*, 133 Ga. 216, 65 S.E. 405 (1909).

As the Supreme Court of Georgia stated in *Banda v. Banda,* 192 Ga. 5, 14 S.E.2d 479 (1941):

> While "the order allowing [temporary] alimony shall be subject to revision by the [trial] court at any time" (Code, § 30-204; *Coffee v. Coffee,* 101 *Ga.* 787 (28 S.E. 977); *Wester v. Martin,* 115 *Ga.* 776, 42 S.E. 81), the rule is different as to decrees for permanent alimony. After a decree for permanent alimony has become absolute, there is no authority given under the law by which a trial court is empowered to abrogate or modify the obligation imposed by the decree, unless such a right has been reserved by consent of the parties in the final decree itself.

Therefore, if as plaintiff contends, the Georgia decree was a total decree of divorce providing for permanent alimony as a part of the settlement of property rights between the parties according to Georgia law, circa 1953, it would, under the full faith and credit clause of the United States Constitution, probably be immune from modification here. *Sistare v. Sistare,* 218 U.S. 1, 54 L. Ed. 905, 30 Sup. Ct. 682 (1910); U.S. Const. Art. 4, § 1; RCW 5.24.010.

If, however, the Georgia decree now before us was not, under the laws of that state, a decree for total divorce with permanent alimony, as those terms were understood in that jurisdiction, then, of course, it would be subject to modification here.

In Washington, a decree in domestic relations ordering support and maintenance or alimony is, on a proper showing, subject to modification. *Morgan v. Morgan,* 59 Wn.2d 639, 369 P.2d 516 (1962); *Troyer v. Troyer,* 177 Wash. 88, 30 P.2d 963 (1934). Even if the support or alimony has been based on an agreement of the parties and incorporated into the decree, it may be modified on a showing of changed conditions unless, of course, such payments are ordered as a part of a division of property. *Millheisler v. Millheisler,* 43 Wn.2d 282, 261 P.2d 69 (1953).

Our study of the Georgia Superior Court decree, the attendant agreement of the parties, and the law of Georgia then extant leads us to agree with the learned trial judge here that the decree did not call for permanent alimony

under Georgia law. Both the language and circumstances necessary to provide permanent as distinguished from temporary or modifiable alimony seem wanting.[1] First, the decree proper does not, as one would expect it to do in precluding all possibility of later modification, designate the alimony as permanent. It simply says that the court ordered the defendant to pay to the plaintiff "alimony and support" at the rate of $200 per month.

The parties' agreement included in the decree provided that the husband agreed to pay the wife for her support and maintenance $200 per month and, although it specified "until the remarriage or death," we do not believe that this phrase changed the obligation from ordinary alimony to permanent alimony under Georgia law. Unless there is language to indicate otherwise, the expression "until her remarriage or death" merely designates the circumstances which ordinarily bring alimony to an end and does not render the decree immune from modification. Therefore, unless the alimony were being paid as a part of the division of property, the circumstances of death or remarriage would not, in our judgment, substantially change the husband's obligation under the decree from one subject to modification on a proper showing to one totally immune from modification.

Next, we note the absence of children and the age of the parties and length of the marriage. If there are no dependent children, and the divorce leaves the parties at an age where they are readily employable, it is unlikely that the court intends the alimony to be forever free from possibilities of modification. As we have seen—and the trial court so found—the divorce left the wife either immediately employable or capable of training herself for employment. Without children to look after, the wife had the freedom and opportunity and youth not just to find a job but to prepare herself for a career. Undoubtedly this was

---

[1] In 1955, the legislature of Georgia expressly provided for the revision or modification of permanent alimony. Ga. Code Ann. §§ 30-220, 30-222.

a circumstance which figured in the intention of the parties as expressed in their agreement and in the decree.

But perhaps the most cogent factor leading to the conclusion that the decree did not call for permanent, as distinguished from regular or ordinary alimony, is that nowhere in either the decree or the agreement does the language direct that the alimony be permanent or forever free from revision or modification. We do not think that either the circumstances of the parties or the decree itself warrant our reading into it the language of *Banda v. Banda,* 192 Ga. 5, 14 S.E.2d 479 (1941), that, as to alimony, "the obligation established by the final decree . . . remains absolutely fixed."

The agreement here stated that the wife "accepts the provisions herein made for her in lieu of . . . all claims . . . for her support and maintenance, or for alimony, temporary or permanent." True, the cases cited by plaintiff say that, if a judgment for permanent alimony contains no reservation of jurisdiction for the purpose of later modification, the superior court has no authority to modify. *Breen v. Breen,* 208 Ga. 767, 69 S.E.2d 572 (1952); *Banda v. Banda, supra.* We think, however, that such a reservation is to be given effect only where the decree clearly calls for what is known under Georgia law as permanent alimony. Georgia decisions imply this for they speak of permanent alimony and the necessity of such a reservation of jurisdiction as essential to later modification. In our opinion, therefore, the decree provided for ordinary alimony, and became subject to modification upon a showing of a change in condition of the parties warranting modification.

In our opinion, the evidence supported the trial court's conclusion that a change in the economic condition of the parties had occurred since 1953 which warranted relieving the defendant of further alimony obligations after 1967. There was evidence that plaintiff had in 1952 traveled to Germany and remained there for 4 months. After the divorce, she made a total of 4 round trips to Germany—in 1954, 1958, 1961 and 1963. She spent 1 month on vacation

in 1966 in South America. She has worked in television and as a character actress in the movies; she is a member of the American Federation of Radio and Television Artists. At the time of trial, she had $8,000 in her own bank account.

The court found that she has been and now is in good health; that she had made no serious effort to find employment until 1965; that she was 29 years old at the time of the divorce and 41 years at trial of this case; and that, since the divorce, she has been and now is fully capable of earning a good livelihood.

After a marriage of but 6 years' duration, the defendant paid to plaintiff alimony of $200 per month for 9 years, totaling $21,600. The finding of plaintiff's employability and self-sufficiency persisting over many years along with her existing financial condition represented a change in her circumstances sufficient to warrant a modification, and we find the modification ordered to be within the court's discretion.

Defendant having cross-appealed, which we find to be without merit, the judgment of the trial court is affirmed.

FINLEY, C. J., WEAVER and ROSELLINI, JJ., and WALTERSKIRCHEN, J. Pro Tem., concur.